UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DEANNA PHOENIX, *on behalf of*                    CIVIL ACTION
*her minor daughter, S.W.*

v.                                                NO. 19-13004

LAFOURCHE PARISH GOVERNMENT, ET AL.               SECTION "F"


ORDER AND REASONS

Before the Court is a motion to dismiss the plaintiff's amended § 1983 claims by defendants CorrectHealth Lafource, LLC (CHL), David Jennings, Kendra Patrick, Patricia Guidry, Katasha Morris, Aysa Every, Shanta Sherman, Sara Armond, and Chelsea Nolan. For the reasons that follow, the motion is GRANTED in part (as to the § 1983 claims against Patricia Guidry, Katasha Morris, Aysa Every, Shanta Sherman, Sara Armond, and Chelsea Nolan) and DENIED in part (as to David Jennings, Kendra Patrick, and CHL); and the case is hereby stayed pending the outcome of the medical review panel.

**Background**

This civil rights lawsuit arises from a mentally ill pretrial detainee's suicide by hanging in his jail cell days after being removed from suicide watch.

Sometime between 12:37 a.m. and 4:30 a.m. on October 7, 2018, 36-year-old Samuel June Williams hanged himself in a jail cell in the E Block at the Lafourche Parish Detention Center.  Nineteen days after he told a correctional officer he was suicidal and five days after being removed from suicide watch by CorrectHealth Lafource LLC employee, David Jennings.

This civil rights litigation on behalf of Williams' minor daughter followed.  Deanna Phoenix, on behalf of Phoenix's (and Williams's) minor daughter, S.W., sued Lafourche Parish Government, Sheriff Craig Webre (in his individual and official capacity as the Sheriff of Lafourche Parish), Major Jeremy Graniere (in his individual and official capacity as the Corrections Director of LPSO), Lieutenant Craig Denison ("in his individual capacity as Shift Supervisor at the LPSO"), Deputy Stephen Waldrop (in his individual capacity), Deputy Sal Marcello (in his individual capacity), CorrectHealth Lafourche LLC (CHL), and CHL employees David Jennings, Kendra Patrick, Patricia Guidry, Katasha Morris, Aysa Every, Shanta Sherman, Sarah Armond, and Chelsea Nolan (each in their individual capacities).  The plaintiff dismissed her claims against Lafourche Parish.

2

The Court granted in part and denied in part the medical defendants' motion to dismiss.[1]  The Court assumes familiarity with the June 17 Order and Reasons.   The plaintiff amended the complaint; the Court takes these amended allegations as true.

Samuel Williams suffered from schizophrenia and bipolar disorder.  Arrested on unspecified charges, on September 15, 2018, Williams was transported to the Lafourche Parish Detention Center, which is operated and administered by Lafourche Parish Sheriff's Office.  Sheriff Craig Webre is a policymaker for the LPSO and detention center; he was responsible for staffing the detention center and contracting with medical providers.  Major Jeremy Graniere and Captain Cortell Davis were Corrections Directors of the LPSO; both were policymakers responsible for training and supervising staff that supervised the detainees in LPSO custody. The LPSO contracted with CorrectHealth Lafourche LLC (CHL) to provide and manage medical and mental health services for detainees

---

[1] Denying the motion in part, the individual capacity § 1983 claim against the CHL employee who removed Williams from suicide watch, David Jennings, remains pending.  Granting the motion in part, the Court dismissed the plaintiff's § 1983 claims based on the Eighth Amendment; the plaintiff's § 1983 claim against Aysa Every is dismissed; the plaintiff's claim that CHL is vicariously liable under § 1983; the plaintiff's § 1983 claims against Kendra Patrick, Patricia Guidry, Katasha Morris, Shanta Sherman, Sara Armond, and Chelsea Nolan; and the plaintiff's Monell claim against CHL.  The Court permitted the plaintiff to amend the complaint to cure the deficiencies of the § 1983 and Monell claims; the Court noted that "a stay of the case was warranted" during the pendency of the medical review panel once the pleadings were completed.

in LPSO custody at LPDC; CHL provided staff, training, and policies for all medical and mental health personnel it employed at LPDC, including David Jennings (a social worker), Kendra Patrick (a nurse practitioner), and a number of licensed practical nurses, Patricia Guidry, Katasha Morris, Aysa Every, Shanta Sherman, Sarah Armond, and Chelsea Nolan.

Detainees are screened on arrival at LPDC.  In the intake screening form for Williams, CHL nurse Aysa Every indicated that Williams denied thoughts of self-harm, denied mental health history, and denied a history of suicide attempts or ideation. From a holding cell, Williams was placed in F Block; the next day he was transferred to G Block.  That same day, Williams informed a correctional officer that he was suicidal.[2]  By 8:05 a.m. on September 18, 2018, Williams was placed on suicide watch and watched by CHL licensed practical nurses Patricia Guidry or Shanta Sherman.

Williams remained on suicide watch from September 18 until 12:14 p.m. on October 2, 2018.  During the two-week suicide watch period, the Custom Flow Chart kept by the CHL medical providers indicates that the following individuals monitored Williams: David Jennings (social worker); Kendra Patrick (nurse practitioner); and

---

[2] A Chart Note by Shanta Sherman at 6:27 a.m. on September 18, 2018 states, "Nurse on duty advised by Lt. Jones inmate told security personnel that he wanted to kill himself inmate placed on suicide watch per protocol."

4

Patricia Guidry, Aysa Every, Shanta Sherman, Sarah Armond, Chelsea Nolan, and Katasha Morris (licensed practical nurses).

Seven days after being placed on suicide watch, Williams was interviewed about his suicidal ideations; he informed either Armond or Jennings that he felt depressed and suicidal, that he had mental health history of bipolar and schizophrenia diagnoses, and that he had been prescribed medications to treat his mental illnesses. The mental health note (taken by either Armond or Jennings) on September 25, 2018 recommends "continue on suicide watch, verify meds, psych appointment upon verification." That same day, Williams signed a release authorizing JeffCare (of Jefferson Parish Human Services Authority) to release his mental health records to LPDC; Williams had been treated at JeffCare since September 2017. Williams's JeffCare records were either received that same day, or CHL failed to obtain them.[3]

Two days later on September 27, 2018, in the Subjective Interview Form in CHL's record, Nurse Practitioner Kendra Patrick

---

[3] It is alleged that either the medical records were received by CHL and saved by Nolan, or that CHL failed to obtain the records. The plaintiff alleges that the JeffCare records essentially confirmed with more specificity what Williams reported to CHL: that Williams had been diagnosed with schizophrenia and bipolar disorder and that his treatment regimen in January 2018 at JeffCare included three medications: a mood stabilizer, to be taken twice daily; a schizoaffective/ schizophrenia medication to be taken once each month; and an anti-depressive to be taken once daily. CHL did not provide Williams with these or any medications. Nor did CHL schedule an appointment for a psychiatrist or psychologist to examine Williams.

noted that Williams was on suicide watch (but erroneously noted the suicide watch time period spanned three, rather than nine, days), that Williams had reported that he was diagnosed with bipolar disorder and schizophrenia a few months ago, that Williams "states he is not taking medication," and that he reports depression and suicidal thoughts.  Patrick also noted "keep on suicide watch obtain records from Jeff Carrol rtc 1 week."

Five days later on October 2, 2018, Williams was examined by Jennings, CHL social worker, who noted in the Subjective Interview Form that Williams

> said he is feeling 'good.'  He denied [suicidal ideation].  He denied past attempts at suicide. [Williams] said he was getting Invega shot from JeffCare...up till a couple months ago....  He verbalized having support from family and hope for his future. He was definitive in his denial of [suicidal ideation] or wanting to hurt himself.

Jennings discontinued Williams's suicide watch: in a mental health note and provider order that same day, Jennings stated "Discontinue suicide watch, house per security, verify meds, psych appointment, f/u in one week by social worker."  In accordance with Jennings's order, Williams was removed from suicide watch on October 2 and placed on D Block.  After a problem with another inmate a few days later, Williams was moved to E Block.

The same day he was moved to E Block, the Exam Forms portion of the CHL record reflects that Nolan noted: "Appointment with

Appt: MenHlth SickCall-Prov for 10-09-2018: f/u social worker in one week Appointment with Appt: Mental Health Provider (NP_PA) for 10-11-18: VERIFY MEDS. PSYCH APPOINTMENT UPON VERIFICATION." Whether Nolan examined or spoke to Williams, or ascertained whether he was experiencing suicidal ideation, is not reflected in the note. "Although Williams advised all the CorrectHealth Lafourche defendant employees that he had been receiving medications for his schizophrenia and bipolar disorder, and the JPSHA records verified as much," it is alleged, Williams "was never prescribed any medications by [CHL] or examined by a psychiatrist."

Nineteen days after threatening suicide -- unmedicated and before being examined or treated by a psychiatrist or physician -- on October 7, 2018, Williams hanged himself in his cell. He was last seen alive at 12:36 a.m.; his body was found at 4:30 a.m. His medical "treatment" at the jail consisted of being placed on suicide watch for 14 days, one visit with a nurse practitioner, and one or two visits with a social worker. By amended complaint, the plaintiff alleged that Nurse Practitioner Kendra Patrick acted with deliberate indifference by failing to prescribe medications and failing to order an immediate psychiatric evaluation so that Williams could be medicated, which effectively denied Williams the necessary medications and placed him at substantial risk of harm given his suicidal ideations. The plaintiff also added allegations that CHL had a policy of refusing to allow its employees to

7

prescribe medications to inmates like Williams displaying serious mental illnesses until after medications were verified and inmates were seen by a psychiatrist.

The medical defendants now move to dismiss the amended claims and move to stay the case pending completion of the medical review panel.


I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

8

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014)(citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." Id. at 679.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).  If the Court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56.  See Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004); see also Fed. R. Civ. P. 12(d).

II.

*A.*

Title 42, United States Code, Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability." Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997)(citation omitted).   To establish § 1983 liability, the plaintiff must satisfy three elements:

(1)  deprivation of a right secured by the U.S. Constitution or federal law,
(2)  that occurred under color of state law, and
(3)  was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

The Court previously summarized the applicable law at length and hereby reincorporates that summary.  See Order and Reasons dtd. 6/17/20.  The Court briefly outlines the applicable individual deliberate indifference and Monell standards and applies them to the amended facts.[4]

*B.*

The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." Thompson v. Upshur Cty., Tex., 245 F.3d 447, 457 (5th Cir. 2001)(citations omitted). "To be more precise," the Fifth Circuit has observed, it "protects pretrial detainees' right to medical care and to 'protection from known suicidal tendencies.'" Baldwin v. Dorsey, 964 F.3d 320, 326 (5th Cir. 2020)(quoting Garza v. City of Donna, 922 F.3d 626, 632 (5th Cir. 2019) and Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996)(en banc)).[5]

---

[4] Since the Court issued its prior Order and Reasons, the Fifth Circuit denied panel rehearing, denied rehearing *en banc*, withdrew its panel opinion in Dyer, and substituted it with Dyer v. Houston, 964 F.3d 374 (5th Cir. 2020).  And, pertinent to the issues presented by the pending motion, the Fifth Circuit has since issued Baldwin v. Dorsey, 964 F.3d 320 (5th Cir. 2020), *petition for cert. docketed on* December 10, 2020, and Estate of Bonilla v. Orange Cnty., Texas, 982 F.3d 298 (5th Cir. 2020).

[5] Notably, the Fifth Circuit has observed that the law does not clearly provide "what ... measures [jailers must take to prevent inmate suicides once they know of the suicide risk.]" Baldwin v. Dorsey, 964 F.3d 320, 328 (5th Cir. 2020)(citation omitted).

To prove deliberate indifference, the plaintiff must show that (1) the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official actually drew that inference. Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 755 (5th Cir. 2001)(quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).[6] "Deliberate indifference is an extremely high standard to meet." Id. at 756.

To be sure, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Dyer, 964 F.3d at 381 (citation omitted). Matters that fall within medical judgment, such as "the decision whether to provide additional treatment[,]" or even acts of medical malpractice, fail to rise to the level of deliberate indifference. Id.; Arenas v. Calhoun, 922 F.3d 616, 620 (5th Cir. 2019)(citations omitted)(analogous Eighth Amendment convicted prisoner context)("Medical treatment that is merely unsuccessful or negligent does not constitute deliberate indifference, 'nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.'"). Thus, a plaintiff "must show that

---

[6] As this Court previously observed, a third element -- that the official "subjectively intended that harm occur" -- has been additionally considered by some panels, but improperly so, according to recent Fifth Circuit authority. See Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020).

the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Arenas, 922 F.3d at 620-21 (citations omitted). To be sure, "[p]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994)(considering analogous Eighth Amendment context).

*C.*

Municipalities (or private entities acting in their places) are "persons" for purposes of § 1983 and may be liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Department of Social Servs. of New York, 436 U.S. 658, 663, 690 (1978). Imposition of § 1983 liability against a municipality under Monell is appropriate in the limited circumstance of when a constitutional tort is caused through the execution of a policy or custom of the municipality. See Bowen v. Watkins, 669 F.2d 979, 989 (5th Cir. 1982)(citation omitted). Municipalities or such private entities may also be sued for "constitutional deprivations visited pursuant to governmental

14

'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Monell</u>, 436 U.S. at 690-91.   A municipality is not liable for injuries "inflicted solely by its employees or agents[; rather] it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id.</u> at 694.

The test for establishing municipal liability in an episodic-act-or-omission case is settled:

> [A] plaintiff must show (1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; ... (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference[; and (3)] either written policy statements, ordinances, or regulations or a widespread practice that is so...well-settled as to...fairly represent[] municipal policy that was the moving force behind the violation.

<u>Cadena</u>, 946 F.3d at 727 (citations, internal quotations omitted); <u>Garza</u>, 922 F.3d at 637 ("[T]o establish municipal liability based on an employee's episodic act or omission, a plaintiff must show the violation 'resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'").[7]

---

[7] The Fifth Circuit recently observed that it sees "no meaningful difference between" the <u>Monell</u> showing and the conditions of confinement showing and that the causation standard -- that the policy or custom is the moving force behind the violation -- is

To survive a motion to dismiss, the complaint must describe the policy and its relationship to the underlying constitutional violation with specific facts. Balle v. Nueces County, 952 Fed.Appx. 552, 559 (5th Cir. 2017) (unpublished)(quoting Spiller v. Texas City, Police Dept., 130 F.3d 162, 167 (5th Cir. 1997)). "Thus, pleadings are sufficient when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force behind municipal employees' deliberate indifference to an inmate's serious medical needs." Id.[8]

---

the same for both Monell and conditions of confinement claims. See Bonilla, 982 F.3d at 308 (citations omitted).

[8] The Fifth Circuit does not necessarily require a complaint to state an unconstitutional policy. The court has found a complaint sufficient if it identifies a rule requiring the jails to provide efficient medical treatment and describes a pattern of behavior where the reasonable inference is that the municipality is violating that rule. For example, in Balle, the Fifth Circuit held that the plaintiff's § 1983 complaint sufficiently pled facts supporting a municipality liability claim. Id. at 559-60. The plaintiff was injured by an officer during arrest, and during his six-day detention received little medical attention despite his multiple requests for medical treatment, his apparent inability to control his bodily functions, and frequent muscle spasms. Id. at 560. After he was finally transported to the hospital, he was diagnosed with various back injuries, underwent surgery, but was still unable to walk. Id. The plaintiff alleged that the county had failed to enforce jailing policies mandated by a Texas Commission that requires jails to implement procedures for prompt and efficient care in acute situations. Id. at 559-60. The complaint alleged that when the plaintiff soiled himself from not being able to control his bodily functions the staff cleaned him and gave him a change of clothes without providing him medical attention. Id. Similarly, when he complained that he was paralyzed and could not walk, he was not given medical attention until the following day and even then, he was cleared with little follow-

III.

As before, only the healthcare provider defendants, CHL and its employees sued in their individual capacities, move to dismiss the plaintiff's amended § 1983 claims.  The plaintiff alleges that CHL and its employees violated Williams' Fourteenth Amendment right to medical care and protection from harm while he was detained at Lafourche Parish Detention Center.   The plaintiff pursues a Monell claim against CHL and episodic-act (deliberate indifference)  claims  against  the  individual  CHL  employee-defendants.

CHL and its employees move to dismiss the plaintiff's amended civil rights claims for failure to state a claim and move to stay this case pending the medical review panel determination.   The Court considers first whether the plaintiff has adequately amended her  complaint  sufficient  to  state  a  plausible  deliberate indifference claim against the individual CHL defendants before turning to address the plaintiff's amended Monell claim against CHL. The medical malpractice claims, which arise from the same

_____

up. Id. The Fifth Circuit held that these incidences evidence a "pattern of failure [that] defied state law requiring that [the] county implement procedures to efficiently and promptly treat inmates." Id. at 560.   From the complaint's allegations of consistent wrongdoing, the court determined that "[r]easonable inferences can be drawn that [the] county had an unwritten policy . . . that fairly represents municipal policy of consistent noncompliance with required state medical standards and that this policy or practice of noncompliance was the moving force behind the constitutional injuries[.]" Id.

factual predicate underlying the federal civil rights claims, have been submitted to a state medical review panel, as state law requires; the parties do not dispute this Court's prior determination that the state law medical malpractice claims are premature and a stay is thus appropriate.

<i>A.</i>

The § 1983 claims against Patricia Guidry, Katasha Morris, Aysa Every, Shanta Sherman, Sarah Armond, and Chelsea Nolan must be dismissed. Claims against Aysa Every are included in the amended complaint despite the fact that the plaintiff previously conceded that the claims against her should be dismissed. In the amended complaint, Phoenix likewise includes claims against Guidry, Morris, Sherman, Armond, and Nolan, but the deficiencies previously identified have not been amended. None of the new allegations mention these defendants. For this reason and because Phoenix indicates that she does not oppose dismissal of the § 1983 claims against Patricia Guidry, Katasha Morris, Aysa Every, Shanta Sherman, Sarah Armond, and Chelsea Nolan, the plaintiff's § 1983 claims against these six defendants are dismissed.

<i>B.</i>

In opposing the defendants' motion to dismiss the amended complaint, the plaintiff focuses on the plausibility of her amended § 1983 individual capacity claim against Kendra Patrick and the Monell claim against CHL. The plaintiff contends that she has set

forth facts describing the subjective deliberate indifference of NP Patrick and has added allegations describing CHL's *de facto* policy of refusing medication/treatment to mentally ill inmates unless their medications are verified and they are seen by a psychiatrist.  The Court considers each challenged amended claim in turn and finds that the plaintiff has stated plausible claims against Patrick and CHL.

1.  NP Patrick

NP Patrick contends that the § 1983 claim against her should be dismissed because the amended allegations -- that she recommended Williams be continued on suicide watch but failed to prescribe medications or immediately order psychiatric evaluation -- do not amount to deliberate indifference.  The plaintiff counters that sufficient facts are alleged to plausibly state a deliberate indifference claim for her failure to treat or assess Williams.  The Court agrees.

As in the original complaint, Phoenix alleges that Williams was arrested on September 15, 2018 and medically screened that same day by CHL employee Every.  Williams denied thoughts of self-harm and did not exhibit signs suggesting risk of suicide or self-injury.  He denied past and current mental health history and denied suicide attempts.  Three days later on September 18, 2018, however, Williams told a correctional officer that he was suicidal and he was placed on suicide watch.  On September 25, 2018,

19

Williams told either Armond or Jennings that he felt depressed and suicidal, that he was previously diagnosed as bipolar and schizophrenic, and that he had previously been prescribed medications to treat his mental illnesses.  The mental health note recommended that Williams be continued on suicide watch, that his medications be verified, and that he undergo a psychiatric evaluation upon verification.

It is alleged that NP Patrick, knowing about these prior visits, examined Williams on September 27, 2018, after he had been on suicide watch for over a week and two days after he reported mental health history a history of taking prescription medications to treat his mental illnesses, and that he had been feeling depressed and suicidal.  NP Patrick noted:

> 36 y/o bm on suicide watch for the past 3 days. He states he is separated. States I told a guard I wanted to kill myself. He reports h/o bipolar and schizophrenia, was diagnosed a few months ago. He denies hospitalizations and suicide attempts. He states he is not taking medication. He denies illicit drug use, reports alcohol use. He reports depression and si/hi thoughts. He denies plan.

NP Patrick noted: "keep on suicide watch obtain records from Jeff Carrol rtc 1 week."  In the amended complaint, Phoenix focuses NP Patrick's alleged deliberate indifference on atrick's failure to prescribe medications or immediately order a psych evaluation; in particular it is alleged that:

- as a nurse practitioner, Patrick was permitted to prescribe psychiatric medications to mentally ill patients;
- when she examined Williams on September 27, she had CHL records that showed that Williams had been on suicide watch since September 18, that he was previously prescribed Invega Sustenna and two other medications for his bipolar and schizophrenic diagnoses, that he was depressed, and that he was previously hearing voices;
- Patrick was aware that Williams had signed a release, but his prior medical records had not been requested or obtained;
- Patrick was aware that, other than a psychiatrist, she was the only one who could prescribe Williams medication for his mental illness while he was an inmate, but she "refused to order an immediate psychiatric evaluation so that he could be prescribed medications and also refused herself to prescribe him necessary medications" and "[s]he was aware when she took these actions she was effectively denying Williams necessary medications and was placing him at a substantial risk of harm given his suicidal ideations."

These factual allegations do not suggest that NP Patrick's response was indifferent to Williams' substantial risk of suicide, let alone *deliberately* indifferent to the suicide risk. To the contrary, NP Patrick kept Williams on suicide watch. But the plaintiff's theory of § 1983 liability against Patrick sweeps more broadly. And the Court must consider whether the allegations plausibly state a deliberately-indifferent failure to treat or assess claim against NP Patrick.

Insofar as the plaintiff alleges that NP Patrick failed to prescribe anti-psychotic or other medications to treat Williams' mental illnesses, whether the plaintiff states a plausible claim for relief is a closer call. Because the plaintiff plausibly alleges that Williams had serious medical conditions or needs that

NP Patrick met with deliberate indifference, dismissal at this stage is inappropriate.

In the amended complaint, the plaintiff alleges that NP Patrick's decision to keep Williams on suicide watch was deliberately indifferent to his serious medical needs in light of her knowledge that Williams had reported to be an unmedicated, depressed, schizophrenic bipolar pretrial detainee and that he had been on suicide watch for nine days. The only action NP Patrick took -- keeping Williams on suicide watch -- did nothing to *treat* his serious mental illnesses and was at best a delay of necessary treatment, whether that necessary treatment was psychiatric evaluation or verification of prescription medications, or both. At the pleadings stage -- where the Court must assume that the allegations are true "even if doubtful in fact" -- this suffices to state a claim.

Taking the amended allegations as true, the plaintiff alleges facts that NP Patrick was aware that Williams was suicidal and, though unconfirmed, that he self-reported that he had previously been prescribed medication to treat two mental illnesses, schizophrenia and bipolar disorder. In spite of this knowledge and Williams' report that he was depressed, the plaintiff alleges facts indicating that NP Patrick refused to treat him or ignored his complaint and symptoms of serious medical needs in the form of mental illnesses and depression. It is alleged that NP Patrick

failed to ensure that Williams was promptly examined by a mental health expert, nor did she attempt to promptly verify his self-reported diagnoses or prescription medications.  To be sure, there are allegations missing that would bolster a failure to treat or failure to assess claim (allegations indicating that Williams was manifesting objective signs of distress or symptoms of his mental illnesses).  Nevertheless, there are sufficient facts alleged, taken as true, including that Williams reported being depressed, suicidal, mentally ill, and off of his prescription medications, which suffice to state a plausible deliberate-indifference claim. Cf. Bonilla, 982 F.3d at 307-308 (affirming grant of summary judgment in favor of corrections officer and nurse, finding that "[p]laintiffs identify no cases establishing that adequate medical care requires the distribution of prescription narcotics to an inmate within hours of her intake" and plaintiffs failed to identify signs of distress or requests for medication).  The plaintiff's allegations that NP Patrick knew (or failed to verify his report) that Williams had serious medical needs (suffered from mental illnesses), yet afforded him no treatment and failed to take steps to immediately or quickly verify his prescriptions in the face of his self-reports of mental illness, depression, and suicidal ideation suffice as an alleged factual predicate of

deliberately indifferent conduct by NP Patrick in her individual capacity.[9]

    2.  CHL

    CHL is properly treated as a municipality for the purposes of the plaintiff's § 1983 claim.[10]  The Court previously determined that the plaintiff failed to state a Monell claim because the factual allegations failed to articulate a formal policy or persistent widespread practice that fairly represented CHL policy; the plaintiff alleged only a conclusory policy based solely on Williams' experience with CHL.  Still, the plaintiff fails to plausibly allege a failure to train claim.  However, in light of

---

[9] As the Court observed in its prior Order and Reasons, if individuals denied or delayed a psychological or psychiatric evaluation or delayed in confirming Williams's diagnoses, or delayed in providing him with treatment (including prescription medications previously prescribed to ameliorate his bipolar and schizophrenic symptoms) such conduct may constitute deliberate indifference.  Carlucci, 884 F.3d at 538 ("A delay in medical treatment that results in substantial harm [may] constitute deliberate indifference.").

[10] No party objected to this prior finding by the Court. When a state or municipality contracts with a private party to administer healthcare to inmates or detainees, the private party and its employees administer the medical services under color of state law (because they perform a public function by providing medical care to individuals in state custody) and therefore may be sued as state actors.  See West v. Atkins, 487 U.S. 42, 55-56 (1988); Perniciaro v. Lea, 901 F.3d 241, 251 (5th Cir. 2018).  The Circuits to have considered the issue agree that, where private entities act in the place of a municipality, Monell applies.  See, e.g., Shields v. Illinois Dep't of Corrs., 746 F.3d 782, 786 (7th Cir. 2014); Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012); Lyons v. Nat'l Car Rental Sys., Inc., 30 F.3d 240, 246 (1st Cir. 1994); Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997).

the principles discussed in Bonilla and Sanchez, the Court finds that the plaintiff plausibly alleges that the interaction of *de facto* policies reflects CHL's deliberate indifference to the serious mental health needs of pretrial detainees.[11]

Here, the plaintiff alleges facts indicating that CHL administered *de facto* policies of refusing to provide prescription medication to detainees with serious mental illnesses until the detainee's prior diagnoses and medication history were verified and the inmate was examined by a psychiatrist and she also alleges facts suggesting an institutional tolerance or custom of failing to assess or verify self-reported mental health history. These *de facto* policies, the plaintiff alleges, are indicated in the mental health notes incorporated in the amended complaint and resulted in systemically denying Williams any medication or psychiatric treatment or examination for 19 days after he first expressed suicidal ideation and 12 days after he signed a release for CHL to

---

[11] See generally Sanchez v. Young Cnty., Texas, 956 F.3d 785 (5th Cir. 2020)(observing that one way a plaintiff can prove he existence of a *de facto* policy is through consistent testimony of jail employees and finding that the plaintiffs created fact issues concerning whether the County had *de facto* policies of failing to monitor and failing to assess pretrial detainees' medical needs, and whether the policies caused the pretrial detainee to be denied needed medical care) and Estate of Bonilla v. Orange Cnty., Texas, 982 F.3d 298 (5th Cir. 2020)(finding no meaningful difference between the Monell policy or custom showing and the conditions of confinement condition or practice showing and suggesting that, had the plaintiffs offered consistent jailer testimony, such would suffice in indicating the County's policy or custom of allowing detainees to self-classify their risk of self-harm).

obtain his medical records to verify his self-reported history of mental illness and prescription medications.  At this stage of proceedings, the plaintiff has alleged *de facto* policies of failing to assess and verify pretrial detainees' mental health and medication needs and has alleged that these policies or customs were deliberately indifferent to Williams' mental health needs, causing Williams to be denied medical care and treatment for the duration of his detention (indeed, until he took his own life). These allegations suffice to survive CHL's motion to dismiss.

★★★

Accordingly, for the foregoing reasons, IT IS ORDERED: that the medical defendants' motion to dismiss is GRANTED in part (the plaintiff's § 1983 claims against Aysa Every, Patricia Guidry, Katasha Morris, Shanta Sherman, Sara Armond, and Chelsea Nolan are dismissed) and DENIED in part (the plaintiff's § 1983 claims against David Jennings and Kendra Patrick, in their individual capacities, and her Monell claim against CHL, remain pending). And, considering that the state-law medical malpractice claims, which arise from the same factual predicate underlying the federal civil rights claims, have been submitted to a state medical review panel, the defendants' request that the case be stayed pending completion of the medical review panel is likewise GRANTED.  The

case is hereby STAYED and closed administratively, to be reopened

upon proper motion after completion of the medical review panel.

New Orleans, Louisiana, January 19, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE